The next call, appeal number 06-3059, Allen v. United States Postal Service. Mr. Gilpin, good morning, welcome. Please proceed. May it please the court. I want to talk about the due process argument that was raised by the court, this court, on remand. And I think what's important here is that due process is not something that you can fudge with. It's not something that you can say... We don't need a lecture about the importance of due process. We need you to show us the reversible error in the remand decision by the administrative judge. I think the error is if you look at the initial proposed notice of proposed removal, which is in the record at 55, if you look at what the deciding official said at that time, what the charges were and what they were concerned about, that does not comport to what was later given the decision in the letter of removal and also what was later said in the testimony at the hearing. Well, I don't follow your point at all. Any legal instrument that conveys a charge, whether it's a criminal indictment or another sort of legal instrument, has to be read top to bottom in a lawyer-like fashion for all that it says. And it seems to me it doesn't matter later what some witness opines as to the meaning of the document. It's a charging paper that's subject to being construed by judges, by us. But it says and it means what we decide it means. And the testimony of a postal official about what he thinks it means, I wonder if that isn't entirely beside the point. That was my contention, was that the judge, the administrative law judge, basically said, yeah, I know what the proposed letter of removal said and I know what the letter of removal said, but I'm going to rely on what the deciding official is telling me here today. Because there was no charge. Where does he say that? I think in his opinion, he basically says... Well, you know, when you start saying when somebody basically says and then you restate in your own way what... I mean, it's the same as the charging paper. It says exactly what the black and white characters on the paper said. And what the A.J. found is exactly what the A.J. actually said. Now, if you want to quote something out of the A.J.'s opinion, fine. But don't tell us what you think the A.J. meant when the A.J. said something different. I understand, Your Honor. You have to be a little precise here. This is a court of appeals. I understand. But what I'm saying here is that if you look at the letter of removal, the proposed letter of removal, it talks about, in those paragraphs on page 55, it talks about you didn't pay your credit card. Those are... There's two paragraphs where it talks about not paying your credit card. When Mr. Allen came back to the deciding official and said, I did pay my credit card. I paid it back months ago before you even put me on leave. Back in September, the credit card was paid off. That's when the removal letter came and said, yeah, but you failed to cooperate with the... and give us information on a timely basis. And you didn't pay your credit card on a timely matter. That was the basis for changing the reasons for why Mr. Allen was terminated. And the administrative law judge adopted that and said, I find that failure to cooperate and the failure to pay your credit card on a timely matter. But that's not what he was charged with initially. Well, help me on what he was charged with initially, because I find that very confusing. Here's the notice of proposed removal, and it has these four paragraphs in it. And then when you come to the first hearing, as I understand it, there's a stipulation that three of the specifications are withdrawn. But this notice is not very clear that there are four separate specifications. Do you understand that these number one, two, three, and four correspond to what the parties viewed as the specifications? Yes. Yes, I think if you look at on page 54 and 55 of the appendix, the only thing that went on the Merits Protection Board, one, two, and four were dismissed initially before there was ever a hearing. So leaving us with three, but I'm still not clear what specification number three is. Is the idea that he was paid these amounts listed in three, and that he misused those funds because he didn't promptly pay the credit card bill? I think initially what they said was that you had this money given to you, you have not paid it back. At least not all of it, you haven't paid it back. That was in the date of writing this letter in January of 2001, you have not paid back your government issued credit card. Okay, so what, and if I understand the government's brief, they're talking about a $44 that he didn't pay back, plus you might consider the $500 that was paid to the Internal Revenue Service, right? Yes. But I don't, I'm having trouble seeing how there's misuse of more than $600, and yet all the opinions here talk about a misuse of $1,700 or whatever. What's going on? It makes a difference, I would think, in terms of whether there's been a serious misuse of government funds, whether we're talking about $600 or whether we're talking about $1,700. And I agree, and that was raised in the briefs, that Mr. Allen, when he got the money and he deposited it in his bank in March of 2000, he paid $4,700. There was a $44 and some change issue difference. So the government, as I understand it, is not contending that that initial payment was too late or that there was a misuse of funds in the period before the initial payment? I think there was no evidence to the contrary about, the check was actually dated February ... No, but the answer to the question is yes, that that's not the contention. No, that's not the contention. So it's the failure to make a full payment until several months later, right? Correct. And so the result of that, according to Specification Number 3, is that he had the use of $44 because his wife wrote the wrong amount on the check, and the misuse of $500, which was sent on his behalf to the IRS. Yes, that's their contention. So that doesn't seem to square with what the administrative judge directed himself to, nor does it seem to square with what the proposed notice of removal and the actual decision on removal addressed. They seem to address a larger amount. I agree, and I think that what happened was evidence that was ... there was four specifications initially, like you said, and one, two, and four were dropped. But when the hearing was held, I think the post office brought in and discussed those evidence from those other four specifications, and the administrative law judge said, looking at all this, I think there is misuse, when only the issue was of these, of Number 3, which is the $44 and the $563 in taxes. And what Mr. Allen's contention was all along was, I didn't have the money to misuse. I didn't get the $500 and some dollars, I went to the IRS. The only thing I'm guilty of, and which he admitted, is that my wife made a mistake. She didn't pay the $4,744, she paid $4,700. So just in response to Judge Dyke's question, you never had any doubt, did you, that the judge was biased on the failure to timely pay the $44 plus the $500, whatever, in the amount that was deducted for taxes? So that was your view of why your client was fired, correct? Yes. Okay, so there was no confusion in your mind. There was no confusion that he was being charged with a failure to pay the credit card all at one shot, when he didn't get the money in the first place. I'm confused by your response to Judge Perot's question. I thought you were telling me that he was removed for misusing a larger amount, not the $44 plus the $563. I think when the initial charge, maybe I'm being confused, I'm not articulating well enough, but when he got the initial charge, that's what he thought. Mr. Allen thought, oh, they're mad at me because I have... If he was removed for misusing $44 and the $563, that's one thing. If he was removed for misusing $1,700, that's another thing. What was your understanding of why he was removed? I think my understanding was that he was initially, Mr. Allen thought that they were saying you haven't paid the $1,700, and he came back and said, wait a minute, I did pay that. It's been paid off. They said, well, okay, but even if you did pay it off back then, you still were late. And that's where the problem comes in is that Mr. Allen, when he first got this first notice, he didn't know. He was calling the inspection... I don't think you're... I think you're confused, or I'm confused. There was a charge of misuse of government funds here. That's ultimately why his removal was sustained, that there was a misuse of government funds. But the problem is that the amount reflected in the agency decision and the amount reflected in the administrative judge's opinion is different from the amount that the government now claims was misused. I agree. That is correct. I think that Mr. Allen, when he went to defend himself against this, that was his assertion was, look, you guys are wrong. You've got the wrong amount. I did not... Right, but can I just clarify that? You just agree with Judge Dike, and I don't understand your agreement. Okay. The ultimate decision to fire, I mean, often there's a discrepancy between a proposed notice of removal and the actual reasons, because that's normal, because the employee comes in in between time and offers some clarification. But was it not your understanding that your client was removed for misuse of postal funds in the amount of $44,000 plus $563,000? They thought, I'm sorry, they thought he had misused more. When they initially did. When they initially fired, not when they proposed him, when they decided to terminate him. When they initially proposed it, they thought there was more. Yeah. By the time they fired him, no, that was all it was. So I'm talking about the decision to remove him, and when they decided to remove him, it was on the basis of the $44,000 plus $563,000. That's what the administrative judge was looking at in terms of the charge and the basis for misuse of postal service funds, correct? Yes. Okay, and that's what we're looking at here. Yeah, and I think I had the confusion between the proposed and the final one. That was where I was confused. Where does the final decision talk about the $44,000 and the $563,000? On page 48, I think in that paragraph, it talks about, on the first paragraph of that page, the decision, when he talks, the Titan official says that you fail to pay your government credit card in a timely manner, resulting in your charge privileges being canceled. Yeah, but it talks about the amount being passed due was $1346.47. Which he admits in that letter that that was not correct at the time. He just didn't know it because Mr. Allen had not provided documentation. Can I just move on to a related question, Judge Jacob? Yeah, go ahead. Okay. It seems like your contention on the merits in the prior case and here is to essentially kind of dispute this deduction for tax purposes as not being an appropriate misuse of postal service funds because when your client got the check, it did not include that amount of money. Yes. Fairly stating- That's fairly stating. He can't misuse money he didn't receive, is my thing. The post office contention was that- No, I get, yeah. Okay. So let me ask you about that. And that is that, let's assume hypothetically, the postal service cut a check for the entire amount, but they said in the envelope, there was a note from the IRS saying, you just got $6,000 from the postal service and you've got to send us 500 of that because that's what you're required to deduct from the money you earn. Would you still be then contending that he did not misuse postal service funds? I would because then he has a choice at that point where he could say, if I don't pay the IRS bill, I'm going to be taxed and penalized or I can pay that and now, or I can decide to pay the credit card off completely. So even though the postal service gave him a check for the entire amount, because that amount, once he received it, was subject to IRS deductions, you're saying that that doesn't count as money he received. Am I correctly stating your answer to my question? I'm confused. I'm sorry. Okay. Assuming the postal service gave him a check for the entire amount, including the tax, the ultimate tax refund. Yes. Yes. But he was required, as all of us good taxpayers are, to turn around and cut a check to the IRS. Your position would be it still wasn't postal service funds because after I got the money, I had to pay taxes on it so it doesn't count as postal service funds that would pay to the employee? No, I don't think they were postal funds. I don't think at that time. He received money for reimbursement for expenses that he had in the relocation. So it was his duty to put in his reimbursements. It was his duty to pay back his credit card, and it was his duty to pay his taxes. But he wasn't misusing government funds. What happened was he got the money back, and it's his decision that they took the taxes out. He may have, if he had gotten the full amount- No, but I'm asking you hypothetically, if they hadn't taken the taxes out. That's my hypothetical. Right. If they had not taken the taxes out. So they had actually cut a check for the entire amount, but your client knows that he was required to turn around and write a check for the $563 to the IRS as withholding. Would you still, under those circumstances, be contending that he shouldn't be charged for misuse of funds, or postal service funds, for that portion that he had to pay out to the IRS? I see. You're saying that he actually got the money, and then he paid the taxes on his own. I see, Your Honor. I would say at that point, he made the choice, and he would, at that point, since he decided to pay his taxes at that point, he would have to pay, but he still hasn't misused the government funds. So your answer, so tell me what the answer is, in the hypothetical, would your argument be different? In other words, would you concede that there was at least a misuse with respect to the amount paid by the postal service? No, I wouldn't. You would not. And that's because any time you pay money to the IRS, that's not the taxpayer's discretion, and therefore, that doesn't count as the taxpayer's money? I mean, what's the theory of that? It is the taxpayer's money, but he has the choice at that time to pay the taxes, or he could pay the credit card, depending on which one he would have to pay for. But I thought your answer to my hypothetical was that it wouldn't make any difference. It seems to me when you're saying it's a difference because he had the choice, then you are saying that if the postal service had given him the entire amount, and he himself had paid the IRS out of that amount, are you saying that under that circumstance, he could be charged for misuse of government, of postal service funds, or not? No, Your Honor, I don't think so, because he still has not taken money for himself and misused it for his own personal gain. That would be my definition. So what if you're a federal employee and you have, typically, you have health care deductions and you have life insurance deductions, what if those are automatic? And so the postal service cuts him a check for $6,000, but that's minus $400 for health insurance and for life insurance. Would you say then he can't, he didn't really get the money from the postal service, and so he can't be charged with misusing anything more than the actual net that he got after those deductions were taken? I think that the thing is that when he got the money, when he got that check for $4,744, if he would have taken that money and used it himself, or if he used it for any other purposes, and I will concede that $44 was not paid by Mr. Allen. No, I'm not talking about that money, I'm talking about . . . But yeah, my definition is that he can't misuse it, he didn't misuse it because the money he got, he sent to the credit card company, so hypothetical, whether it was for taxes or for health insurance, I don't think he misused it. All right, thank you Mr. Gilpin, we'll restore some rebuttal time, even though your time has expired. Mr. Lobal. Counsel, where were you at 9.30 this morning? The beltway was closed for one hour, your honor, due to police activity. There was a standoff with two individuals in a car. So you were prevented from getting to court by the time counsel are required to check in? Yes, your honor. Were you able to communicate to the court? I saw the clerk when I came in, your honor. When you were en route, were you able to communicate with the court that you were detained? No, your honor, I called my office, I don't know whether anyone called. From the road? Yes. You have a cell phone? Yes, your honor. You didn't call the court? I don't have the court's telephone number, I don't know whether someone called. Did you ask your office to call the court? No, I simply told them that I was stuck in traffic. Did they know you were due in court at 9.30 this morning? Yes, your honor. Wow, well I would advise you not to ever let it happen again. You're not responsible for police activity on the Beltway, but you're certainly responsible to try to communicate at the earliest possible time to the court that you're unable to be here when required by the court. Alright, let's get to the argument. Your honor, Mr. Allen was on notice that he was charged with failure to pay his credit card late. I'm still confused as to the amounts here. It seems to me that this decision here isn't based solely on the misuse of the $44 and the $563. Do you agree with that? The Postal Service does agree with that, your honor. So the decision is based on the misuse of a larger amount than that? Yes, your honor. Is that a problem in terms of sustaining the decision, assuming that we agree that a charge of misusing the $44 and the $563 could be sustained, but he was charged with misusing a larger amount and the decision was based on misusing a larger amount and the charge of misusing a larger amount is erroneous, but it would be correct to charge him with the misuse of a smaller amount. Can we still sustain this? The court may still sustain this. It would still be a misuse of government funds and a significant amount of government funds, about $600, your honor. Are you agreeing that there's zero evidence of misuse of anything above $644 or so? No, your honor. No. Mr. Allen. So there is evidence of the misuse of all of the dollars represented by the larger figure? Yes, your honor. What is the evidence of the misuse of the amount other than the $44 and the tax money? For example, there are a few, your honor, but for example, Mr. Allen, the AJ found Mr. Allen was reimbursed in the amount of $4744 on February 11, 2000. The AJ further found Mr. Allen did not apply those funds to the credit card until the end of March. So for six weeks, he was improperly in possession of Postal Service funds. But that amount still only has to do with the $44 and the IRS amount. No, he was required to immediately apply the entire amount of the check to his government credit card. Yeah, that's the $44. $4744. Yeah, but he applied all except $44 to the credit card, as I recall. And the IRS one. But not for six weeks, your honor. Well, so he didn't deposit the check until March 24th, and within a few days, he paid off the $4700 for the credit card. You're seriously contending that a few days delay is a misuse of funds? Your honors, the issue, and I think what is causing some confusion, is that the failure to pay the credit card in a timely manner is, and the failure to apply funds to the credit card on time, that while they may be viewed as two separate specifications, essentially the failure to pay the credit card on time is a necessary element of the charge of misuse of funds. In other words, had Mr. Allen, month by month, been paying his card on time, it would have quite literally been impossible for him to have misused any of these checks because they would have been his to keep. But he wasn't charged with that. You stipulated to dismissal of three of these charges, and there was just one charge, and that is that he received this reimbursement and that he didn't promptly pay the credit card. And he didn't deposit the reimbursement until February 20th, March 24th, he paid the credit card very promptly thereafter, with the exception of two things, the $44 and the $563, right? First, your honor, I would Is that a correct statement? No, your honor, there was a third $800 amount, which only came to light at the hearing through Mr. Allen's admission. But he wasn't charged with that. He wasn't charged with that because by definition, if it came to light afterwards, he wasn't charged with it, right? No, but the amount that he was overdue on the credit card, the court may accept, should accept the Postal Service's position that he was charged not only with failing to apply these funds to the card late, but also that he was charged with failing to pay the card in a timely manner. The notice of proposed removal states very clearly, at page 54, that you did not pay your credit card as you agreed by signing the form. But that's the problem we've had in this case from the beginning, is that there seems to be a difference between failing to pay your credit card on time, which possibly could be grounds for removal, and misuse of government funds. This employee was not charged with the former, that is, failing to pay his credit card on time. He was charged with misuse of government funds, right? Your Honor, it seems to be caught up on the actual title of the charge. But LeChance and its progeny allow the agency to describe the charge in the notice of proposed removal. The entire charging document must be read. The title of the charge itself need not be read in a vacuum. And Mr. Allen's argument is that I didn't know how to defend myself based on the notice of proposed removal. But because failing to pay the card late was a necessary element of the charge, and because Mr. Allen readily admitted that he failed to pay the card on time, even if there was an error, it's harmless, there's no due process problem, and the agency was entitled to remove him both for misusing government funds and for paying the credit card in an untimely manner. Let me see if I understand what you're saying. You're effectively saying that under LeChance, at least as you read it, we should erase from the charging document the language about misuse of postal service funds. We should act as if that doesn't exist. And we should look at the rest of the document, which we usually label the specification, and consider that the source of his notice, and that as setting the parameter of everything that happened thereafter. Your Honor, the court need not erase the title of the charge. The Postal Service maintains that he misused Postal Service funds. Let me stop you, because this case has given me a complete fix, because every time I read something more about it or hear something more about it, it sounds totally different than it did five minutes ago. I'm the postal worker. I'm given a credit card because I'm going to move. I sign an agreement, and I'm clearly instructed that I have to pay the bill on the credit card within 30 days of receiving the bill, whether or not I've sought or received reimbursement. Yes, Your Honor. Now, I charge $100 on that credit card. The bill comes. I don't pay it. We're at day 31. Have I misused Postal Service funds? Yes or no? Yes. How so? According to at least one MSPB decision cited in the brief, Tommy L. Brown, misuse of a government credit card is akin to misuse of government property, i.e., government funds. That's the way it's worded in that decision. So there is some precedent for that. And the reason, it seems, is because... Well, wait a minute. Wait a minute. Let's assume for a moment that I don't give a darn about the MSPB decision for any number of reasons, including the fact that it's not binding authority as to this panel. Yes, Your Honor. Just tell me as a matter of common sense and economics how I have misused the Postal Service's One, I haven't paid the Citibank credit card bill of $100. Your Honor, the Postal Service receives reimbursements from Citibank each time an employee uses a card to charge acceptable items onto that card. The contract is negotiated by GSA. And there is testimony... So the economic harm to the Postal Service is that they forfeit the rebate? I do not know in this case precisely what happened. At the very least, it affects the Postal Service's credit rating, if you want to view it that way. It may affect the amount of rebate they're able to negotiate in the future. Well, I'm just a simple-minded fellow. I'm trying to work from the concept of funds, money, owned by the Postal Service, that I, as their employee, am now misusing because I didn't pay the bank back based on the credit the bank extended to me. It's not the Postal Service money. It seems like it's the bank's money. So I may be abusing the bank, and I may be misusing their funds, but so far I don't see that I've misused any funds of the Postal Service because I didn't receive any funds or any credit from the Postal Service. Help me out. The Postal Service may not realize the financial harm immediately upon that late payment. However, if the Postal Service were not allowed to remove employees who did this and many employees felt it was okay to pay late… No, no, no. Don't give me a lecture about the policy and bad employees. Of course bad employees should be removed, but it has to be lawful. We're trying to understand if it's lawful. I'm trying to understand how the dollars flow, and as far as I can tell, you're talking nonsense. Your Honor, I'm… Where is the Postal Service money implicated in my $100 charge that's overdue? In the terms the Postal Service is able to negotiate in the future with the bank. Harm to the bank, you understand from your question. The charge isn't harm to the reputation of the Postal Service. The charge is misuse of the funds of the Postal Service. However, the Postal Service only gets reimbursed first on charges which are allowed. And so if charges which are not allowed are made, the Postal Service doesn't… Wait a minute. What do you mean reimbursed? The Postal Service gets reimbursed. What are you talking about? They get a kickback, if you will, from Citibank. It's called a rebate. Not reimbursement and rebate. A rebate. Totally different things. Yes, a rebate. I misspoke. Okay, so they may not get the rebate that they otherwise would get because I paid late. That is possible. Okay, now what evidence was in this record that rebates that otherwise would have gone to the Postal Service didn't go because Alan paid late? There is only testimony in the abstract from the deciding official at Joint Appendix 113 to 114. The deciding official did not know whether there would be a particular specific rebate. He was, again, speaking generally. So I can only point to… Wouldn't it be part of the Postal Service's burden to show that a rebate that otherwise would have flowed didn't flow precisely because month after month for quite a while Alan failed to pay the bill? No, Your Honor. The Postal Service need only demonstrate that it may be harmed financially and likely will be harmed financially if it allows employees to do this sort of thing. No, we're not talking about employees in general. We're talking about one man who didn't pay within the monthly billing cycle. But then the court would need to decide that because it would take hundreds of Mr. Allens to possibly impact the Postal Service in a real way that one Mr. Allen could be allowed to get away from it. I would think it wouldn't be that at all. I would think the contract would provide quite clearly, the contract between GSA on the one hand, on behalf of the Postal Service, and Citibank on the other hand, precisely what the consequences are when there is late payment or nonpayment in the monthly billing cycle by one or more government employees. And, Your Honor, I get that evidence. If the contract says the rebate won't be paid, it will be subtracted from the gross payment sent to the government, then you could have proved the harm by just putting the contract in the record. You didn't do that, right? That contract isn't on the record, correct, Your Honor? Let me try to put this back together again and let's assume hypothetically that we find the concept that you've just been discussing with the Chief is a little too abstract to absorb. And therefore, tell me if I'm wrong, what I think we're left with in terms of this case under the charge misuse of Postal Service funds is the fact that the Postal Service paid him, if you don't count the taxes, a certain amount of money and that he allegedly took too long to deposit it. And when he deposited it and paid his credit card off, it did not include $44 plus $563 to the IRS, which he didn't pay back on his credit card until several months thereafter. Are we on the same page? Yes, except that I understand the Chief's point earlier that he did not deposit the entire check into his account until late March. However, because he was already in arrears on his credit card payments, that check needed to have been applied to the credit card immediately. So he, in effect, held on to the entire 4744. No, so let's assume. Yes. Okay, what we're still left with is also an aspect of that is the lack of diligence of holding on to the check for one month period without any excuse. And that's holding on to government funds and not depositing. Yes, Your Honor. If that's all we're left with, is it the government's position that, leaving aside all the other stuff about credit card payments outside of that period and that amount and other times, leaving that aside that he still would have been removed for simply the misuse of government funds in connection with that one check? Just the 563 plus the 44. Plus the untimeliness of not depositing it until March when he received it in February. From reading all the deciding official's testimony, it's impossible to say for certain. It appears that he still would have, but counsel is unable to say for certain what the deciding official would have done. So what are we to do now? Remand this again so that the deciding official can be asked for the third time to articulate what the heck he's doing and why? Your Honor, I believe there is enough testimony from the deciding official that makes it clear that he considered Allen's misuse of funds, even setting aside the $4,700 kicking around for six weeks, that he considered that serious enough misuse of funds in over $600 to warrant removal. I thought you just answered me the opposite. I thought you just told me before that, that you didn't know whether that was enough. He didn't speak specifically to that circumstance, but reading his testimony in totality, I believe the court may be able to- Do you think our case law supports, and if so, what cases support our being able to say, do you have any cases to cite for us in that regard? One of the charges or one of the specifications? One of, well, this is not, okay. One of the specifications is LaChance, right? Or Burroughs. But what gives us the basis for saying he was charged, as you described to Judge Michel, with two things? And if we don't absorb the abstractness of that other thing, what is it that gives us the ability to say, well, we conclude that the deciding official would have taken the same action nonetheless? Your Honor, I don't have the case site in front of me, but the court may review the penalty for reasonableness. The court may take a closer look at the penalty if it decides there were, in effect, two charges, and decides only to uphold one of those charges. I'd be happy to. But in the first instance, we're reviewing what the deciding official decided. We're not sort of doing this on a clean slate. How are we to review what a deciding official decides if we don't know what he would have decided? Put it this way. Suppose the deciding official said, you misused $5,000, and it turns out that the only evidence is the misuse of $600. Okay? So just hypothetically, and can we sustain the discipline under those circumstances without knowing whether the deciding official would have reached the same result, about $600, as he did about $5,000? I don't know the answer to that question, Your Honor. It may be cause for remand. But again, I'd be happy to send this court a letter with some quick research I can do today on that issue. All right. Thank you, counsel. Mr. Gilpin, we'll give you two minutes for rebuttal. Yes, court? I just want to bring up two points that were discussed. In the record on the appendix 141, the only evidence about when the check was deposited in March was Mr. Allen. There was no evidence other than the date on the check that he held on to it or kept it. His testimony was uncontradictory about when he put the money in the bank. And then as soon as he put in the bank from the 24th on the 30th, I think it cleared. Let me ask you just one question. I don't want to belabor this really anymore. But a quick answer, if you could. Do you buy that the problem we seem to be having theoretically is the charge misuse of postal service funds and the narrative which includes failure to pay charges on time. Is it your view that it matters? In other words, if it's our conclusion that this should have been called misuse of charge account versus misuse of — it should have had misuse of postal funds plus misuse of charge card. Why does that matter, if your view is that it does, when the whole narrative, which is supposedly — the point of this is to give your client notice about what he's supposed to respond to. If the whole narrative holds and the whole narrative discusses in detail the issue of late charges and so forth, is there really a problem by calling it exclusively misuse of postal funds and not adding on and also late charges otherwise? I think so. I do think so. Because when he was given the proposed removal in January, his sole response back to the post office was, look guys, you got it wrong. I paid the credit card off. Because that's what he thought they were upset about. And then he finds out, no, we're upset about a lot more when he got the letter of removal. And that's what I think the problem was. All right. Thank you. The case is submitted.